**Entered on Docket
December 21, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**



FILED

DEC 21 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>DANIEL ALFONSO ALVAREZ and MARIE CECELIA HAMILTON-ALVAREZ ,<br><br>Debtors. | BAP No. NC-18-1104-BKuF<br><br>Bk. No. 12-55010-MEH |
| DANIEL ALFONSO ALVAREZ; MARIE CECELIA HAMILTON-ALVAREZ ,<br><br>Appellants,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, LLC, SERVICING AGENT FOR THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, as TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA12, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA12,<br><br>Appellee. | MEMORANDUM[*] |

---

[*] This disposition is not appropriate for publication.  Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Argued and Submitted on November 29, 2018
at San Francisco, California

Filed – December 21, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable M. Elaine Hammond, Bankruptcy Judge, Presiding

Appearances:    Cathleen Cooper Moran of Moran Law Group, Inc. argued for appellants; Lior Katz argued for appellee.

Before:    BRAND, KURTZ and FARIS, Bankruptcy Judges.

# INTRODUCTION

Appellants Daniel Alvarez and Marie Hamilton-Alvarez appeal an order denying their request for attorney's fees under Rule 3002.1(i)[1] for having to prosecute a motion to determine final cure and payment under Rule 3002.1(h). The Alvarezes alleged that the motion was necessary because the loan servicer's accounting in its response with respect to postpetition mortgage arrears was inaccurate. The bankruptcy court determined that the accounting was not inaccurate, or, even if it was, the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

inaccuracy did not warrant sanctions. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Events prior to the motion

The Alvarezes purchased their home in 2006. They signed a note and deed of trust in favor of Countrywide Home Loans, Inc., the original lender. In 2011, the beneficial interest in the deed of trust was transferred by assignment to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of the CWALT, Inc. Alternative Loan Trust 2006-OA12, Mortgage Pass-Through Certificates, Series 2006-OA12. Bayview Loan Servicing, LLC ("Bayview") became the servicer of the loan in June 2015.

The Alvarezes filed their chapter 13 bankruptcy case on July 3, 2012. Their chapter 13 plan was confirmed on December 3, 2012. At least eight Notices of Mortgage Payment Change ("Payment Change Notices") were filed by either Bayview or its predecessor during the case.

After all plan payments had been made, the chapter 13 trustee filed a Notice of Final Cure Payment in compliance with Rule 3002.1(f). Bayview timely filed a response to the trustee's notice (the "Original Response") asserting that the Alvarezes were not current on all postpetition mortgage payments, owing $24,507.60. Attached to the Original Response was a detailed payment history for the Alvarezes' postpetition mortgage payments. The payment history included undefined terms such as "GL"

3

and "GL refund" and noted at least one unexplained "reversal."

Shortly thereafter, Bayview filed an amended response ("Amended Response") which reflected a slightly different postpetition amount due of $24,520.37, an increase of $12.77. The suspense amount had changed to $3,456,41, which apparently accounted for the $12.77 difference. The Amended Response included a revised detailed payment history for the relevant five year period.

**B.     The Alvarezes' motion**

Two days after Bayview filed its Amended Response, the Alvarezes filed their Motion to Determine Final Cure and Payment under Rule 3002.1(h) (the "Motion"). The Motion addressed only Bayview's Original Response. In short, the Alvarezes alleged that Bayview's payment history accounting was inaccurate and inconsistent. They claimed that changes in the mortgage payments occurred several times without the filing of Payment Change Notices, that at least two payments (checks #760 and #767) were not credited in the payment history although both checks were cashed, and that monthly mortgage statements were inconsistent with the filed Payment Change Notices. They also asserted that several extra principal payments may not have been applied.

Because of the alleged inaccuracies, the Alvarezes asked the court to (1) find that Bayview had failed to provide the information required by Rule 3002.1(g), (2) bar Bayview from presenting evidence in support of its

4

claimed arrearages, and (3) award them their attorney's fees and costs associated with the Motion. The Alvarezes sought an order deeming the mortgage current or, alternatively, determining the amount that was presently due and unpaid.

Bayview opposed the Motion ("Opposition"). Referencing only its Amended Response, Bayview maintained that the Alvarezes had received credits totaling $3,423.23 (noted as "GL" in the payment history) for any payment changes that were not properly noticed and admitted that, while its predecessor used confusing accounting methods, checks #760 and #767 were applied. Bayview argued that mortgage statements failed to support any alleged inaccuracies in the payment history, because payments were made in accordance with the Payment Change Notices, not the amounts stated in the mortgage statements. Bottom line, argued Bayview, the Alvarezes did not tender all of their postpetition mortgage payments and failed to provide any evidence to contradict the arrearage calculated by Bayview. Bayview opposed any award of fees; the Motion lacked merit and, even if it had merit, fees were not appropriate because counsel for the Alvarezes made no attempt to resolve the alleged issues prior to filing the Motion.

According to Bayview, the postpetition default amount as of November 14, 2017, after giving the Alvarezes credit for payments made since the filing of the Amended Response, was $18,691.21. To account for

the new outstanding amount, Bayview attached an updated payment history.

In their reply filed on the day of the hearing for the Motion, the Alvarezes noted what they contended were more inconsistencies with Bayview's accounting, namely discrepancies between the payment histories attached to the Original Response and the Amended Response; the Original Response listed a September 14, 2012 payment for $2,570.68, but this payment was missing from the Amended Response.[2] Further, Bayview had admitted its failure to file all Payment Change Notices, which was sanctionable under Rule 3002.1(I).

At the hearing, the parties and the court went through a painstaking review of the payment history attached to the Amended Response, which counsel for the Alvarezes admitted she had not yet reviewed except for the first few lines. Bayview's counsel explained why funds are held in suspense, how check payments #760 and #767 were applied, what credits were applied due to the non-filed Payment Change Notices, and that "GL" stood for "general ledger". The court expressed its own confusion over the payment history and the accounting practices used.

After discussing the payment history at great length, the court asked counsel for the Alvarezes what items were still in dispute. Counsel replied that she wanted some time "to go back and work the numbers[.]"

---

[2] We do not see this alleged discrepancy in the payment histories.

Thereafter, the parties announced that they had reached a resolution to the Motion, with the exception of attorney's fees. The parties agreed that the amount of postpetition mortgage arrears as of November 14, 2017, was $18,691.21, as stated in Bayview's Opposition. The court entered an order approving the parties' filed stipulation.

## C. The fee dispute

In their brief in support of attorney's fees, the Alvarezes argued that inconsistencies between the two payment histories and inconsistencies between those accountings and the filed Payment Change Notices caused them, their counsel and the court to spend a significant amount of time puzzling out the reversal of entries, payments made but not credited, and unexplained corrections and credits. In the end, they argued, the arrearage was $6,285.57 less than Bayview had originally claimed. The Alvarezes argued that Bayview's filing of inaccurate information was the equivalent of failing to provide any information and warranted sanctions under Rule 3002.1(I). They requested fees of $12,870.00 and costs of $262.18, which did not include the filing of a reply or the upcoming hearing.

Bayview opposed the Alvarezes' fee request, arguing that the amount of postpetition arrears was accurate and that the Alvarezes' claim to the contrary was proven meritless; they ultimately agreed with the $18,691.21 figure reflected in the Opposition and never expressed any remaining issues with Bayview's postpetition accounting. The alleged $6,285.57

"decrease" in the arrears amount did not result from the Motion; it was due to additional payments the Alvarezes made after the Amended Response had been filed. As to the Payment Change Notices, Bayview argued that they were either timely provided or that the Alvarezes received credits for any notices not filed and those credits were given prior to the Motion. Further, the $12.77 difference in the payment histories was solely a result of how much credit should have been given for any Payment Change Notices not timely filed.

Bayview argued that, because the Alvarezes had ultimately agreed to the arrearage amount, they could not argue that Bayview had provided them with "inconsistent information" justifying attorney's fees. Bayview argued that fees and costs of $13,000 was excessive for something that could have been resolved informally with very little attorney's fees incurred by both sides. At the end of the day, argued Bayview, the Motion established only that Bayview's accounting of postpetition arrears was "basically correct."

In reply, the Alvarezes argued that Bayview was attempting to shift the cost of identifying and correcting their pattern of servicing errors to the debtors, who successfully challenged the accuracy of the filed responses. Further, argued the Alvarezes, Bayview was trying to obscure the fact that its Amended Response was $5,829.16 more than the parties stipulated to resolve the dispute; that was $5,829.16 Bayview would have pocketed if the

8

Alvarezes had not challenged the payment histories. Finally, the Alvarezes disputed Bayview's contention that the matter could have been resolved by conference among counsel. The lengths of the pleadings, the admitted failures to file accurate and well-supported Payment Change Notices, and the duration of the hearing on the matter addressing the payment history accounting all spoke to the complexity of the issues.

After a hearing, the bankruptcy court announced its oral ruling denying the Alvarezes their attorney's fees, finding that the accounting Bayview provided under Rule 3002.1(g) was not inaccurate, or, to the extent it was inaccurate, it did not reach a level that warranted sanctions. The Alvarezes timely appealed the court's later written order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.	Were sanctions available under Rule 3002.1(I) for a motion brought under Rule 3002.1(h)?

2.	Did the bankruptcy court clearly err in finding that the accounting in Bayview's response was not inaccurate?

3.	Did the bankruptcy court abuse its discretion by denying the Alvarezes their attorney's fees?

## IV. STANDARDS OF REVIEW

The bankruptcy court's decision to deny attorney's fees is reviewed for an abuse of discretion. *See Shaw v. City of Sacramento*, 250 F.3d 1289, 1293-94 (9th Cir. 2001). Supporting findings of fact are reviewed for clear error. *Roy Allen Slurry Seal v. Laborers Int'l Union Local Union 1184*, 241 F.3d 1142, 1145 (9th Cir. 2001). A bankruptcy court's factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

A.  Rule 3002.1

Under Rule 3002.1, after the debtor completes all payments under the plan, the chapter 13 trustee must "file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim." Rule 3002.1(f).

Upon service of the trustee's final cure notice, the creditor has twenty-one days to respond by filing a statement indicating (1) whether it agrees that the debtor has cured the default on the claim, and (2) whether the debtor is current on all postpetition payments consistent with the "maintenance of payments" requirement in § 1322(b)(5). Rule 3002.1(g). If

10

the creditor asserts that postpetition amounts are owed, it must itemize any amounts it claims are due and unpaid as of the date of the statement. *Id.* While the rule states generally that the creditor must provide an "itemized" statement, Form 4100R — Response to Notice of Final Cure Payment — to be filed with the statement specifically requires in Part 4 that the creditor "must attach an itemized payment history disclosing the following amounts from the date of the bankruptcy filing through the date of this response: all payments received; all fees, costs, escrow, and expenses assessed to the mortgage; and all amounts the creditor contends remain unpaid." *See also In re Howard*, 563 B.R. 308, 314 (Bankr. N.D. Cal. 2016) (the itemization must be sufficiently detailed and state with particularity the amounts that remain unpaid) (citing *In re Carr*, 468 B.R. 806, 808 (Bankr. E.D. Va. 2012)).

Within twenty-one days after service of the creditor's response under Rule 3002.1(g), the debtor or the trustee may file and serve a motion requesting the court to determine whether the amounts claimed by the creditor are owed and seeking an order declaring that the debtor has cured the default and paid all required postpetition amounts. Rule 3002.1(h).

Rule 3002.1(I) provides teeth to ensure a creditor's compliance with Rule 3002.1. If the creditor fails to (1) file its notice of payment change within twenty-one days, Rule 3002.1(b), (2) file its notice of fees, costs or expenses within twenty-one days, Rule 3002.1(c), or (3) respond to the final

cure notice within twenty-one days, Rule 3002.1(g), the court may either preclude the items from being introduced into evidence or award other relief, including awarding the debtor its reasonable attorney's fees caused by the creditor's failure, or both. Rule 3002.1(I). Sanctions under Rule 3002.1(I) are permissive in that the court "may" award them for a creditor's violation of subdivisions (b), (c) or (g).

**B.     Analysis**

Although the bankruptcy court did not expressly address the legal question of whether sanctions under Rule 3002.1(I) are available for a motion under subdivision (h), which is what the Alvarezes brought here, it implicitly ruled that they are (given the proper showing). Bayview asserts that attorney's fees are not recoverable for a motion filed under subdivision (h) because subdivision (h) does not provide for them. However, beyond this one-sentence argument, Bayview provides no authority or further argument for its contention. In any case, we believe we must address this threshold issue.

We could locate only one case where a court has addressed this precise legal question. *See In re Howard*, 2016 WL 8222335, at *4 (Bankr. N.D. Cal Aug. 15, 2016). Without analysis, the *Howard* court held that remedies under Rule 3002.1(I) are not available for a motion under Rule 3002.1(h):

This Motion was made pursuant to subpart (h), which does not

have a provision for award of attorney's fees, and is independent from subpart (I). The court will not import provisions of Rule 3002.1(I) into Rule 3002.1(h).

*Id.*

Other courts, while not addressing this legal question head on, have implicitly ruled that sanctions provided by Rule 3002.1(I) are available for a motion under Rule 3002.1(h) when the question is whether the creditor has complied with subdivision (g). *See In re Ferrell,* 580 B.R. 181, 186-88 (Bankr. D. S.C. 2017) (indicating that a motion under Rule 3002.1(h) is the proper procedure for debtors who wish to challenge the creditor's Rule 3002.1(g) statement); *In re Farhat,* Case No. 12-30103 (Bankr. N.D. Cal. Aug. 17, 2017); *In re Longmire,* Case No. 09-14629 (Bankr. W.D. Tenn. Sept. 11, 2015); *In re Kreidler.* 2013 WL 1334910, at *2-3 (Bankr. M.D. Pa. Mar. 29, 2013). This makes sense since subdivision (h) specifically references subdivision (g), and subdivision (I) specifically references subdivision (g).

The Code is silent as to procedure, but clearly sanctions are available for a creditor's failure to comply with Rule 3002.1(g). Perhaps a debtor could file an opposition to the creditor's Rule 3002.1(g) response as opposed to filing a motion under Rule 3002.1(h). However, this would be putting form over substance. Whether one calls it an opposition to the creditor's response under Rule 3002.1(g) or a motion to determine the final cure amount under Rule 3002.1(h), the debtors here were seeking relief for

what they contended was the creditor's failure to comply with subdivision (g). In that event, the remedies under subdivision (I) including the award of attorney's fees were available, and the bankruptcy court did not err in concluding so.

Some courts have ruled that a creditor's inaccurate response under Rule 3002.1(g) is equivalent to a failure to provide the required information under the rule. *See Tollstrup*, 2018 WL 1384378, at *3 (Bankr. D. Or. Mar. 16, 2018); *In re Howard*, 563 B.R. at 315 (an inaccurate response under Rule 3002.1(g) "complies with neither the letter nor the spirit" of the rule); *In re Ferrell*, 580 B.R. at 187 (incorrect statement may be "worse than no statement"); *but see In re Trevino*, 535 B.R. 110, 131 (Bankr. S.D. Tex. 2015) (concluding that inaccurate notice does not violate Rule 3002.1, only the lack of one). While the bankruptcy court apparently did not disagree with that legal proposition, it found that the accounting Bayview provided in its responses was not inaccurate, as the Alvarezes had contended. The Alvarezes challenge the court's factual finding regarding accuracy.

In viewing the Original Response and the Amended Response, the difference in the amount owed was $12.77. This was apparently due to a change in the suspense amount. Much of the balance in the suspense account was attributable to credits issued by Bayview based upon its predecessor's failure to file certain Payment Change Notices. While this $12.77 difference could point to an error or inaccuracy, that was not so in

this case. Further, the reduced arrears amount provided in the Opposition merely reflected the fact that the Alvarezes had made some payments after the Amended Response had been filed; it did not establish that errors existed in the accounting.

Although Bayview admitted that the accountings and payment histories described the application of certain payments in a confusing fashion and failed to explain in laymen's terms why certain credits were given, that does not equate to error. Further, and what cuts most against the Alvarezes' argument, is that they eventually agreed that the amount in postpetition arrears claimed by Bayview was correct. Accordingly, the court's finding that the Amended Response was not inaccurate is not illogical, implausible or unsupported by the record.

Alternatively, the bankruptcy court determined that even if an inaccuracy did exist, it did not reach the level of the inaccuracies in *In re Howard* warranting sanctions under Rule 3002.1(I). In *Howard*, the creditor's first Rule 3002.1(g) response asserted that the debtor owed prepetition mortgage arrears of $20,712 but that the debtor was current with all postpetition payments. 563 B.R. at 311. No itemized statement was attached. The next day, the creditor filed a second response, this time stating that the debtor had paid all prepetition arrears and was current with all postpetition obligations. *Id.* Two days after that, the creditor filed a third response, this time stating that the debtor had paid the prepetition

15

arrears in full but was delinquent on postpetition payments in the amount of $674,693.60 plus other fees and expenses of $62,623.90. No itemized statement was attached to the third response either. *Id.*

The debtor moved to strike all three responses, award attorney's fees, and deem the mortgage postpetition current.[3] *Id.* The debtor argued that she could not respond to the creditor's allegations because none of the three dissimilar responses was supported by an itemization as required under Rule 3002.1(g). *Id.* Although the creditor opposed the motion, which asserted yet another dollar amount owed, it did not appear at the hearing. *Id.* at 311-12. Ultimately, the creditor asserted that the third response was the correct one, at least with respect to the amount of postpetition arrears of $62,623.90. *Id.* at 312.

Deciding that the creditor had failed to comply with Rule 3002.1(g), the *Howard* court awarded the debtor her attorney's fees, which the creditor did not oppose:

> The award of attorney's fees is more than justified in this case. Within a span of four days, PNC filed three responses to Trustee's Notice that were confusing and inaccurate. None of the responses included an itemized statement as required by Rule 3002.1(g) so

---

[3] The debtor brought the motion under Rule 3002.1(I). *Id.* at 314. The court instructed debtor's counsel (Ms. Moran, who also represents the Alvarezes) to file a subsequent motion under subdivision (h) if the debtor wanted the declaratory relief of the mortgage deemed current. *Id.* at 318. The court decided later that sanctions under Rule 3002.1(I) were not available for a motion under Rule 3002.1(h). *In re Howard*, 2016 WL 8222335, at *4.

16

>  neither the court nor Debtor could verify the amounts stated in the responses. Debtor and her attorney had to expend time, energy, and efforts to get an accurate itemization of the alleged amount owed postpetition, including the filing of this Motion, when it was PNC's duty to file an accurate response and itemized statement.

*Id.* at 314-15.

A creditor's conduct was similarly egregious in *In re Ferrell*. In that case, the creditor's response under Rule 3002.1(g) asserted that the debtors owed a postpetition arrearage of $6,671.65. 580 B.R. at 183. Upon receipt of the response, debtors' counsel immediately contacted the creditor and provided it with evidence that the debtors had tendered some, if not all, of the alleged missing payments. In response, the creditor maintained that the debtors owed $12,459.64. The creditor provided no explanation for the differences between the two figures and never filed an amended response under Rule 3002.1(g).

The debtors then filed a motion under Rule 3002.1(h) seeking, among other things, sanctions under Rule 3002.1(I). The creditor failed to oppose the motion or appear at the hearing. *Id.* at 185-86. The court determined that the creditor's inaccurate response, failure to object to debtors' motion and failure to appear and support its claimed arrearage amount failed to comply with the purpose of Rule 3002.1(g) and warranted sanctions under Rule 3002.1(I). *Id.* at 187. The court awarded the debtors their attorney's

fees of $1,500.00.

The Alvarezes do not assign any error to the bankruptcy court's alternative ruling. Nonetheless, given the egregiousness of the creditors' conduct in *Howard* and *Ferrell* and a court's discretion to impose or not impose sanctions under Rule 3002.1(I), we conclude that the court did not abuse its discretion in deciding that sanctions were not warranted in this case. Bayview timely filed its Original Response and its Amended Response, both of which included itemized accountings of the Alvarezes' postpetition payment history. The accountings were difficult to decipher, but the dollar amounts claimed differed by only $12.77. The Alvarezes eventually admitted that they owed postpetition arrears and agreed with Bayview as to how much. Bayview also filed an Opposition to the Motion and appeared at the hearing, opposing the Alvarezes' contentions of error and request for attorney's fees. Bayview did not file wildly inaccurate responses or sit idly by once the Alvarezes filed the Motion. In fact, counsel for Bayview repeatedly reached out to their counsel to settle the matter informally to no avail.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.[4]

---

[4] In their issues on appeal, the Alvarezes raise the question of whether a debtor has the burden of proof on a motion under Rule 3002.1(h). They provide little argument on the subject, citing some out-of-district cases and asserting in a one-sentence

(continued...)

---

⁴(...continued)
argument that the creditor has the burden as to whether postpetition charges are allowed under Rule 3002.1(h). The Alvarezes do not articulate any error by the bankruptcy court as to burden of proof. We decline their invitation to issue an advisory opinion on this matter.